RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 07a0397p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

AIR PRODUCTS AND CONTROLS, INC.,
      *Plaintiff-Appellant,*

  *v.*

No. 06-1885

SAFETECH INTERNATIONAL, INC. and R. GAYLEN
DAVENPORT,

      *Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 05-73031—Julian A. Cook, Jr., District Judge.

Argued: April 16, 2007

Decided and Filed: September 27, 2007

Before: ROGERS and COOK, Circuit Judges; O'MALLEY, District Judge.[*]

---

## COUNSEL

**ARGUED:** David P. Fornshell, DINSMORE & SHOHL, Cincinnati, Ohio, for Appellant. Mark D. Murphy, MURPHY LAW FIRM, Overland Park, Kansas, for Appellees. **ON BRIEF:** David P. Fornshell, DINSMORE & SHOHL, Cincinnati, Ohio, for Appellant. Mark D. Murphy, MURPHY LAW FIRM, Overland Park, Kansas, for Appellees.

---

## OPINION

---

O'MALLEY, District Judge. This is an appeal from two orders of the district court: (1) an order granting a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) filed by Defendants-Appellees Safetech International, Inc. ("Safetech") and R. Gaylen Davenport ("Davenport") (collectively, "Defendants"); and (2) an order denying a motion for reconsideration filed by Plaintiff-Appellant Air Products and Controls, Inc. ("Air Products"). In this lawsuit, Air Products alleges, *inter alia*, that Defendants engaged in a fraudulent transfer of assets to avoid a debt owed to Air Products. The debt accrued from several years of purchases on credit

---

[*] The Honorable Kathleen O'Malley, United States District Judge for the Northern District of Ohio, sitting by designation.

by Safetech, and was reduced to a judgment award following litigation between the parties. The primary issue in this appeal is whether Safetech, a Kansas corporation, and Davenport, an individual residing in Kansas, are subject to personal jurisdiction in Michigan, where Air Products has its principal place of business. The district court found that it lacked personal jurisdiction over Safetech and Davenport because the causes of action did not "arise out of" Defendants' contacts with Michigan, and, accordingly, the district court dismissed the case. For the reasons stated herein, we **REVERSE** the district court's decision to dismiss for lack of personal jurisdiction and **REMAND** this action for further proceedings. We do not address the order denying Air Products' motion for reconsideration, as our decision as to the first order renders that issue moot.

## I.    BACKGROUND

Air Products is a Delaware corporation with its principal place of business in Pontiac, Michigan. From its Michigan headquarters, it manufactures and distributes life safety products, such as smoke detectors and various electronic relays. Safetech is a Kansas corporation with its principal place of business in Lenexa, Kansas. Safetech is a former customer of Air Products that, between 1993 and 2002, purchased a series of goods from Air Products for resale to Safetech's customers. Davenport is an individual who resides in Lenexa, Kansas. At all times relevant to this lawsuit, Davenport was the president and owner of Safetech.

In August 1993, Safetech opened a credit account with Air Products and purchased goods on credit from Air Products over the course of almost nine years, until March 2002. Air Products alleges that, over the course of those years, Davenport contacted Air Products in Michigan on several hundred occasions through telephone, email, fax, and ordinary mail, and that the cumulative value of the goods purchased exceeded several hundred thousand dollars. The goods purchased by Safetech were manufactured in Michigan and sent to Safetech in Kansas or directly to Safetech's customers.

Between 2001 and 2002, Safetech failed to make payments to Air Products for goods purchased, and, in 2002, their business relationship ceased. Litigation ensued in the United States District Court for the District of Kansas, initiated by Safetech, in which both parties asserted claims against each other, primarily for breach of contract, the result of which was a jury verdict in favor of Air Products in the amount of $216,290.51, plus $6,020.45 in costs. On June 22, 2004, the district court in Kansas entered judgment in favor of Air Products and against Safetech in that amount.

Air Products alleges that, throughout the trial, Safetech and its counsel represented to Air Products that Safetech was no longer in business and was without funds to pay past due amounts or, presumably, any judgment. Air Products claims to have later learned, however, that, in December 2003, Safetech and Davenport sold assets to a company named Firealarm.com in the amount of $1.5 million. Air Products alleges that the sale of assets to Firealarm.com was a fraudulent transfer, primarily because it included a bill of sale for $400,000 to Davenport *personally* for an asset that Air Products believes either does not exist or properly belongs to Safetech, not Davenport. Air Products contends that the $400,000 paid to Davenport should have been paid to Safetech and, as a result, would have been available to satisfy the judgment award of $216,290.51 owed by Safetech to Air Products.[1] Air Products further alleges that, around the time of the sale of assets, Davenport was aware of Safetech's debt to Air Products because he acknowledged the debt during a deposition

---

[1] Apparently, the remainder of the proceeds from the asset transfer was not available to satisfy Safetech's debt to Air Products. According to Safetech, it used the money to satisfy its outstanding financial obligations (employee wages, taxes, pension liabilities, legal costs, etc.) and had very little remaining from the sale to pay its various creditors. Although Safetech negotiated payment agreements with many creditors, it did not reach an agreement with Air Products.

taken in connection with the Kansas litigation on August 28, 2003 and, therefore, that the transfer was undertaken with an intent to injure Air Products.

On July 5, 2005, Air Products filed this action in Michigan state court, asserting seven causes of action: two counts for fraudulent transfer or obligation under M.C.L.A. § 566.34(1)(a) and § 566.34(1)(b)(2), respectively; a count for transfer by debtor as fraud under M.C.L.A. § 566.35(1); a count only against Davenport for unjust enrichment; a count only against Davenport for illegal dividend; a count for attorneys fees; and a count for equitable relief. On August 4, 2005, Safetech and Davenport removed the action to the United States District Court for the Eastern District of Michigan and moved to dismiss for lack of personal jurisdiction. After the district court granted the motion, Air Products filed a motion for reconsideration, arguing that the district court did not adequately consider that its claim for attorneys fees was based on the contract between the parties and, thus, arose from Defendants' contacts with Michigan. The district court denied that motion on the basis that it was untimely and, in any event, that it was not well taken. Air Products filed a timely notice of appeal.

## II.     ANALYSIS

### A.     Law

This court reviews *de novo* a district court's dismissal for lack of personal jurisdiction pursuant to Fed. R. Civ. P. (12)(b)(2). In the context of a Rule 12(b)(2) motion, a plaintiff bears the burden of establishing the existence of jurisdiction. *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989). Where, as here, the district court relies solely on written submissions and affidavits to resolve a Rule 12(b)(2) motion, rather than resolving the motion after either an evidentiary hearing or limited discovery, the burden on the plaintiff is "relatively slight," *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988), and "the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal," *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). In that instance, the pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and the district court should not weigh "the controverting assertions of the party seeking dismissal." *Id.* at 1459.

Personal jurisdiction over an out-of-state defendant arises from "certain minimum contacts with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Depending on the type of minimum contacts in a case, personal jurisdiction can either be specific or general. *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1116 (6th Cir. 1994). In this case, Air Products asserts that both specific jurisdiction and general jurisdiction are present. Because we ultimately conclude that the district court had specific jurisdiction over Defendants, we focus only on that question and do not reach the question of general jurisdiction.

In analyzing personal jurisdiction in diversity actions such as this, federal courts must look to the law of the forum state to determine the reach of the district court's personal jurisdiction over parties, subject to constitutional due process requirements. *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 909 (6th Cir. 1988). This court, therefore, must engage in a two-step process: (1) first, the court must determine whether any of Michigan's relevant long-arm statutes authorize the exercise of jurisdiction over Defendants; and, if so, (2) the court must determine whether exercise of that jurisdiction comports with constitutional due process.

As to the due process inquiry for specific jurisdiction (the only type of personal jurisdiction we address here), our Court has established a three part test for determining whether such jurisdiction may be exercised:

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). This court articulated this test based on existing Supreme Court jurisprudence on personal jurisdiction, primarily *International Shoe*, and the approach "simply applies in a specific fashion the broad rule requiring substantial minimum contacts as a basis for jurisdiction." *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 226 (6th Cir. 1972), *abrogated on other grounds by Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998). It is often repeated that the first prong - purposeful availment - is the "sine qua non for in personam jurisdiction." *S. Mach.*, 401 F.2d at 381-82.

### B.    Discussion

In this case, the district court concluded that two Michigan long-arm statutes (one that applies to individuals and one that applies to corporations) authorized the exercise of jurisdiction over Defendants, but that the exercise of jurisdiction in this case would run afoul of the limits of constitutional due process. Specifically, the district court found that Defendants had purposefully availed themselves of the privilege of acting in the forum state or causing a consequence in that state, but determined that Air Products' causes of action did not "arise from" those activities and, thus, that exercise of jurisdiction in this case would not be reasonable.

Because we agree with the district court that Michigan law authorizes the exercise of jurisdiction over Defendants, we do not address that aspect of the district court's decision. We focus only on the due process requirements for the exercise of specific jurisdiction over Defendants, analyzing the three prongs of the *Southern Machine* test. Although the district court correctly concluded that the first prong of that test - purposeful availment - was satisfied here, we augment the district court's analysis in certain respects because that prong is arguably the most important, and because it colors our discussion of the other prongs of the test.

### 1.    Purposeful Availment

As indicated above, in order to exercise specific personal jurisdiction over an out-of-state defendant, that defendant must have purposefully availed himself of "the privilege of acting in the forum state or causing a consequence in the forum state." *S. Mach.*, 401 F.2d at 381. "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts or of the 'unilateral activity of another party or third person.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal citations omitted). "Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Id.* (citation omitted and emphasis in original). In particular, where a defendant "has created 'continuing obligations' between himself and the residents of the forum, he manifestly has availed himself of the privilege of conducting business there." *Id.* at 476 (internal citation omitted). In addition, physical presence in a forum state is not required, and the Supreme Court has "consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Id.* (citations omitted).

The facts of this case satisfy the "purposeful availment" requirement for several reasons. First, Defendants had a business relationship with Air Products lasting almost nine years in which they purchased goods cumulatively worth hundreds of thousands of dollars. Defendants mailed an

application to open a credit account to Air Products in Michigan and sent purchase orders to Michigan, some or all of which presumably formed the basis of contracts on which the parties ultimately based their breach of contract claims in the initial Kansas litigation. With respect to interstate contractual obligations, the Supreme Court has emphasized that parties who "'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions for the consequences of their activities." *Burger King*, 471 U.S. at 473 (quoting *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647 (1950)). Although entering into a contract with an out-of-state party *alone* does not automatically establish sufficient minimum contacts, the presence of certain factors in addition to the contract will be found to constitute purposeful availment. *Id.* at 478-79. Factors to consider are "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.* at 479. In this case, the parties did not engage in a one-time transaction, but in a continuing business relationship that lasted a period of many years. Defendants reached out beyond Kansas' borders to conduct business with a company whose principal place of business it knew to be in Michigan. Such contacts are not "random," "fortuitous," or "attenuated," but are the result of deliberate conduct that amounts to purposeful availment.

In addition, Safetech does not dispute that Davenport contacted Air Products in Michigan on approximately several hundred occasions through telephone, email, facsimile, and ordinary mail correspondence for purposes of discussing and placing orders for goods. Although these contacts are certainly numerous, "[a] numerical count of the calls and letters has no talismanic significance." *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1301 (6th Cir. 1989). Rather, "[t]he quality of the contacts as demonstrating purposeful availment is the issue, not their number or their status as pre- or post-agreement communications." *Id.* (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1194 (5th Cir. 1985)). This court has found that contacts lack quality when they are initiated by the plaintiff rather than the defendant, in part because "[t]he unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum." *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)). In this case, Defendants contacts are not only numerous, they are also the type of contacts that demonstrate purposeful availment. Many of them were initiated by Defendants themselves and, therefore, are not simply the result of unilateral activity on the part of Air Products. In addition, they were made for purposes of placing purchase orders and, therefore, continuing the parties' business relationship.

As the district court pointed out, finding that the purposeful availment prong is satisfied in this case is consistent with prior Sixth Circuit case law. *See In-Flight Devices*, 466 F.2d at 226-27 (finding purposeful availment where the defendant negotiated a substantial business contract for the manufacture of goods with a firm it knew to be in the forum state); *Cole*, 133 F.3d at 436 (6th Cir. 1998) (finding purposeful availment where "a nonresident defendant transacts business by negotiating and executing a contract via telephone calls and letters to a resident of the forum state.").

In addition, evidence that relates specifically to the transfer of assets supports Air Products' assertion that Defendants' conduct was directed at or aimed at Air Products, such that this case would fall under the "effects test" enunciated by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984). In *Calder*, the Supreme Court held that two Florida residents, a writer and editor for the *National Enquirer* magazine, were subject to personal jurisdiction in California court because they intentionally aimed their tortious conduct (an allegedly defamatory article) at a California resident, entertainer Shirley Jones. *Calder*, 465 U.S. at 788-89. Even though the article was written and edited in Florida and one of the defendants had only been to California twice, the Court explained that the defendants knew that the focal point of the article as well as the "brunt of the harm" would be in California, and, therefore, jurisdiction was proper based on the "effects" of their Florida conduct in California. *Id.* at 789-90.

The Sixth Circuit, as well as other circuits, have narrowed the application of the *Calder* "effects test," such that the mere allegation of intentional tortious conduct which has injured a forum resident does not, by itself, always satisfy the purposeful availment prong. *See Scotts Co. v. Aventis S.A.*, 145 Fed.Appx. 109, 113 n.1 (6th Cir. 2005) ("[W]e have applied *Calder* narrowly by evaluating whether a defendant's contacts with the forum may be enhanced if the defendant expressly aimed its tortious conduct at the forum and plaintiff's forum state was the focus of the activities of the defendant out of which the suit arises."); *Reynolds*, 23 F.3d at 1120 (distinguishing *Calder* and making a particularized inquiry of the relations and dealings between the parties to find that an allegedly defamatory article did not establish sufficient minimum contacts); *see also Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1079 (10th Cir. 1995) ("Our review of these post-*Calder* decisions indicates that the mere allegation that an out-of-state defendant has tortiously interfered with contractual rights or has committed other business torts that have allegedly injured a forum resident does not necessarily establish that the defendant possesses the constitutionally required minimum contacts."). Although the "effects test" has been limited, the existence of intentional tortious conduct nonetheless "enhances" a party's other contacts with the forum state for purposes of a purposeful availment analysis. *See Scotts*, 145 Fed.Appx. at 113 n.1.

In the present case, Air Products alleges that Defendants knew that it owed a judgment debt to Air Products *at the time* it engaged in the allegedly fraudulent transfer, and Air Products alleges that Defendants transferred the assets with the intent to hinder, delay, or defraud Air Products. Defendants also undoubtedly knew that Air Products had its principal place of business in Michigan, and that the focal point of its actions and the brunt of the harm would be in Michigan. We find, therefore, that Defendants' contacts with Michigan are enhanced by its conduct which, at least as alleged, was intentionally directed to cause harm to a Michigan resident.

For those reasons, and the reasons explained by the district court, Defendants have satisfied the first prong of the *Southern Machine* test.

### 2.      Arising From

The second prong of the *Southern Machine* test is that the plaintiff's cause of action must "arise from" the defendant's contacts with the forum state. We have articulated the standard for this prong in a number of different ways, such as whether the causes of action were "made possible by" or "lie in the wake of" the defendant's contacts, *Lanier*, 843 F.2d at 909, or whether the causes of action are "related to" or "connected with" the defendant's contacts with the forum state, *Youn v. Track, Inc.*, 324 F.3d 409, 419 (6th Cir. 2003) (quoting *Third Nat. Bank in Nashville v. WEDGE Group Inc.*, 882 F.2d 1087, 1091 n.2 (6th Cir. 1989)). In addition, we have characterized this standard as a "lenient standard" and have explained that the cause of action need not "formally" arise from defendant's contacts. *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002).

In this case, the district court cited the "made possible by" standard and found that Air Products' causes of action were not made possible by Defendants' contacts with Michigan because the causes of action were not based on a specific provision of a contract, they related to a transfer of assets that occurred wholly outside the state, and the transfer did not involve entities in the state. However, if Defendants had not engaged in a long-term business relationship with Air Products, they would not have accrued the debt or had a judgment entered against them, and Air Products could have no claim for fraudulent transfer. One element of Air Products' cause of action for fraudulent transfer is that there be a debtor-creditor relationship which, as just explained, was made possible by and would not have existed but for Defendants' business relationship with Air Products. In addition, to the extent that Defendants' asset transfer was an act directed at Air Products and done with an intent to injure Air Products, such that Defendants' contacts are "enhanced," the causes of

action in this case are directly related to that act. Accordingly, the present action arises both from Defendants' contacts with the forum state as well as actions directed at the forum state.[2]

There is also another consideration that supports this result we reach. One of the remedies that Air Products seeks in this case is attorneys fees, which, it alleges, it has a right to based on a provision of the credit application submitted by Safetech to open its initial credit account with Air Products. The provision provides that, should it be necessary for Air Products to collect money owed on the credit account, Safetech will be liable for the costs of collection, including attorneys fees. Air Product's request for attorneys fees, therefore, arises *directly* from Defendants' contacts with the forum state - i.e., from Defendants' initiation of an ongoing business relationship via the credit application it sent to Air Products in Michigan. Therefore, at least that component of Air Products' claims clearly arises from Defendants' contacts with Michigan.[3]

Especially given that this prong is a "lenient standard," that the cause of action need not "formally" arise from the defendant's contacts, and that Air Products need only make a *prima facie* showing of jurisdiction under the procedural posture of this case, this prong is satisfied in this case.

### 3.     Reasonableness

The third prong of the *Southern Machine* test is that "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *S. Mach.*, 401 F.2d at 381. This requirement exists because "minimum requirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities." *Burger King*, 471 U.S. at 477-78 (quoting *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). However, "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id*. at 477. Moreover, where, as here, the first two criterion are met, "an inference of reasonableness arises" and "only the unusual case will not meet this third criteria." *Theunissen*, 935 F.2d at 1461 (quoting *Am. Greetings Corp.*, 839 F.2d at 1170). In determining whether the exercise of jurisdiction is reasonable, the court should consider, among others, the following factors: (1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the policy. *Intera Corp. v. Henderson*, 428 F.3d 605, 618 (6th Cir. 2005).

---

[2]This is not to say that the mere existence of a debtor-creditor relationship renders a debtor subject to personal jurisdiction in the creditor's forum state for any claim related to that debt. Aside from the fact that the mere existence of such a relationship, without more, likely would not satisfy the purposeful availment prong, the claims asserted here are also based on actions that arguably were directed at a resident of the forum state. Because of that, and because of the extended business relationship from which the underlying debt resulted, these claims are sufficiently related to the debtor's contacts with the forum state to be said to "arise from" those contacts.

[3]The district court, in addressing Air Products' motion for reconsideration, concluded that Air Products' claim for attorneys fees was a compulsory counterclaim that must have been raised in the initial Kansas litigation. Because Air Products' failed to do so, the district court held that Air Products was barred from raising its claim for attorneys fees in the present lawsuit pursuant to Fed. R. Civ. P. 13(a). We disagree with the district court's conclusion. Even if the right to recoup out-of-pocket costs prior to the date of the judgment in the Kansas litigation might have been cut off by the failure to assert that right earlier, we do not think that new, potentially unexpected costs should suffer the same fate. In other words, the costs and fees provision does not just apply to the *first* attempt to collect moneys owed, but may also apply to subsequent attempts to the extent they fall within the terms of the provision (e.g., in this case, to the extent that a claim for fraudulent transfer is an action "to collect this account" within the meaning of the contract). Accordingly, we find that Air Products is not barred from asserting that claim at this stage of the proceedings.

In this case, the district court determined that the exercise of jurisdiction would be unreasonable, essentially echoing its finding as to the second prong: that minimum contacts had not been established because the causes of action did not arise from Defendants' contacts with Michigan. There is no other consideration cited by the district court, or put forward by Defendants, to support a finding that the exercise of jurisdiction would be unreasonable in this case. Although it would be a burden on Safetech and Davenport to travel from Kansas for this litigation, Michigan clearly has an interest in protecting a company whose principal place of business is located in Michigan. Because there is an inference of reasonableness when the first two *Southern Machine* prongs are satisfied, and because there are no considerations put forward by Defendants to overcome or contradict that inference, the exercise of jurisdiction is reasonable under the circumstances of this case.

## III.     CONCLUSION

For the foregoing reasons, the district court's exercise of jurisdiction over Defendants is both authorized by Michigan law and consistent with constitutional due process. Accordingly, the judgment of the district court dismissing for lack of personal jurisdiction is **REVERSED**, and this case is **REMANDED** for further proceedings.