RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0237p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

ALIXPARTNERS, LLP,

                *Plaintiff-Appellee,*

    *v.*

                      No. 16-1027

CHARLES BREWINGTON,

                *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:14-cv-14942—Gerald E. Rosen, District Judge.

Decided and Filed: September 2, 2016[*]

Before: MOORE, ROGERS, and SENTELLE,[**] Circuit Judges.

───────────────

**COUNSEL**

**ON BRIEF:** Steven E. Aldous, FORSHEY PROSTOK, LLP, Dallas, Texas, for Appellant. Jason C. Schwartz, David J. Debold, GIBSON, DUNN & CRUTCHER LLP, Washington, D.C., Karl G. Nelson, GIBSON, DUNN & CRUTCHER LLP, Dallas, Texas, for Appellee.

───────────────

**OPINION**

───────────────

    SENTELLE, Circuit Judge. AlixPartners, LLP ("Alix") hired Charles Brewington ("Brewington"), a resident of Texas, as a Talent Acquisitions Director in Alix's Dallas office.

───────────────────

[*]This decision originally issued as an unpublished opinion filed on September 2, 2016. The court has now designated the opinion as one recommended for full-text publication.

[**]The Honorable David B. Sentelle, Senior Circuit Judge for United States Court of Appeals for the District of Columbia Circuit, sitting by designation.

After he was terminated by Alix, Brewington filed a demand for arbitration on behalf of himself and a purported class of current, former, and potential Alix employees. Alix filed an action in the Eastern District of Michigan, seeking a declaratory judgment that Brewington was precluded from pursuing claims in arbitration on behalf of any purported class. Brewington moved to dismiss Alix's complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). The district court, finding that Brewington's contacts with the State of Michigan were sufficient to establish personal jurisdiction, denied the motion. Alix filed a motion for summary judgment, arguing that the arbitration clause in Brewington's employment agreement did not authorize him to pursue classwide arbitration. The district court granted Alix's motion for summary judgment and enjoined Brewington from pursuing claims in arbitration on behalf of any absent individual or purported class. For the reasons set forth below, we affirm.

## I. BACKGROUND

Alix is a global consulting and business advisory firm with offices around the world, including one in Southfield, Michigan. Alix's Michigan office processes and administers payroll and benefits for employees in the United States and is directly involved in the hiring of new personnel in the United States. In early 2013, Alix hired Brewington, a Texas resident, to serve as a Talent Acquisitions Director and a member of Alix's Corporate Services team in its Dallas, Texas office. The employment agreement contains two provisions relevant to this case. First, the agreement provides that it "will be construed and interpreted in accordance with the laws of the State of Michigan." Second, it contains the following arbitration clause:

> Except for any action by the Company seeking any injunctive relief or other equitable relief against you, any dispute arising out of or in connection with any aspect of this Agreement and/or any termination of employment thereunder . . ., shall be exclusively subject to binding arbitration under the National Rules for the Resolution of Employment Disputes of the American Arbitration Association ("AAA"), provided all substantive rights and remedies including any applicable damages provided under any pertinent statute(s) related to such claims . . . shall be available in the AAA forum. Any decision of the arbitrator shall be final and binding as to both parties, and enforceable by any court of competent jurisdiction. . . .

In March 2014, Brewington was terminated. He responded by filing a demand for arbitration with the AAA, asserting claims under Title VII of the Civil Rights Act of 1964,

42 U.S.C. §§ 2000e *et seq.* Brewington filed the demand not only on behalf of himself, but also on behalf of a purported nationwide class of current, former, and potential Alix employees. Alix responded by filing an action in the United States District Court for the Eastern District of Michigan under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, seeking a declaration that Brewington was precluded from pursuing claims in arbitration on behalf of any purported class or absent individuals.

Brewington moved to dismiss Alix's action, pursuant to Federal Rule of Civil Procedure 12(b)(2), for lack of personal jurisdiction. Alix responded by submitting declarations and record evidence concerning Brewington's contacts with Michigan. The record shows that, although Brewington lives in Texas, Alix's Michigan-based personnel were involved in his hiring. As part of the candidate evaluation process, for example, Brewington communicated with Dr. Leslie Evola, an on-staff psychologist in the Michigan office, and completed a personality and skills assessment that was reviewed by Dr. Evola. After Alix extended an offer to Brewington, Alix's Director of Human Resources signed the proposed agreement in Michigan and sent it to Brewington in Texas to be signed and returned. Brewington sent the completed agreement, which included the Michigan choice-of-law provision, back to Alix's Michigan office. In late April 2013, Brewington travelled to Alix's Michigan office to attend a mandatory orientation program before beginning his full-time work in Texas.

While working in Dallas, Brewington maintained a substantial connection with Alix's Michigan office. As a member of the Talent Acquisition Team, Brewington was responsible for recruiting candidates for Alix's Financial Advisory Services ("FAS") group, which required him to communicate directly with Alix's Michigan-based personnel. He worked directly with Patricia Diefenbacher, Alix's Director of Talent Management for FAS, who was based in the Michigan office. According to Diefenbacher, she had numerous email and telephone communications with Brewington concerning candidates and available positions in the FAS group. On at least one occasion, Brewington worked with Ray Kantor, an Internal Audit Director based in the Michigan office, to recruit and network with Michigan candidates for Alix's "Detroit Internal Audit Manager" position.

Based on these facts, the district court denied Brewington's motion to dismiss. *AlixPartners, LLP v. Brewington*, 133 F. Supp. 3d 947 (E.D. Mich. 2015). Relying on "factually similar cases," the district court found that Brewington "established connections with Michigan and availed himself of the forum." *Id.* at 957–58. The district court emphasized: (1) Brewington's "semi-regular" email and telephone contact with his supervisors in Michigan; (2) the agreement's Michigan choice-of-law provision; (3) Brewington's visit to Michigan for an orientation session; and (4) Brewington's work in recruiting Michigan candidates to fill positions in the Michigan office.[1] *Id.* at 958. The district court also determined that the cause of action had a "'substantial connection'" with Brewington's in-state activities, *id.* at 959 (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 384 (6th Cir. 1968)), and concluded that the forum was "a reasonable one" for Brewington, "given that the contract was formed, and partly carried out, in Michigan," *id.* at 960.

While the motion to dismiss was pending, Alix filed its motion for summary judgment. Relying on our decision in *Reed Elsevier, Inc. ex rel. LexisNexis Division v. Crockett*, 734 F.3d 594 (6th Cir. 2013), Alix argued that Brewington's arbitration agreement did not authorize him to pursue arbitration on behalf of a class. In *Reed Elsevier*, we held that "the question whether an arbitration agreement permits classwide arbitration is a gateway matter, which is reserved 'for judicial determination unless the parties clearly and unmistakably provide otherwise.'" *Id.* at 599 (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). The district court granted Alix's motion. *AlixPartners, LLP v. Brewington*, No. 14-CV-14942, 2015 WL 8538089 (E.D. Mich. Dec. 10, 2015). The district court found that the arbitration clause did not "clearly and unmistakably" provide that class arbitrability was a question left for the arbitrator, *id.* at *4–5, and after finding no "material distinction" between *Reed Elsevier* and the instant case, the district court granted Alix's motion and enjoined Brewington from "pursuing claims in

---

[1]The district court also found that the fact that Brewington "sent and received e-mails contained on servers located entirely in Michigan" supported the conclusion that Brewington had sufficient minimum contacts with the forum. *AlixPartners*, 133 F. Supp. 3d at 958. Brewington may not be haled into court in Michigan based on Alix's unilateral activity. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Therefore, Alix's decision to store its emails on servers located in Michigan, without more, does not support the exercise of personal jurisdiction over Brewington.

arbitration on behalf of any absent individual or purported class arising out of the events giving rise to this suit . . . ." *Id.* at *5–6. This appeal followed.

We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II. DISCUSSION

We review *de novo* both the district court's denial of Brewington's motion to dismiss for lack of personal jurisdiction, *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007), and the district court's grant of Alix's motion for summary judgment, *Reed Elsevier*, 734 F.3d at 596–97 (citing *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 171 (6th Cir. 2011)).

## A.

The plaintiff bears the burden of establishing the existence of personal jurisdiction. *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989) (citations omitted). When the district court resolves a Rule 12(b)(2) motion solely on written submissions, the plaintiff's burden is "relatively slight," and "the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal[.]" *Air Prods.*, 503 F.3d at 549 (citations and quotation marks omitted). The plaintiff meets this burden by setting forth "specific facts showing that the court has jurisdiction." *Serras*, 875 F.2d at 1214 (citation and quotation marks omitted). "[T]he pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and the district court should not weigh 'the controverting assertions of the party seeking dismissal.'" *Air Prods.*, 503 F.3d at 549 (quoting *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991)).

When a federal court's subject-matter jurisdiction is based on a federal question, the court's exercise of personal jurisdiction must be both authorized by the forum State's long-arm statute and in accordance with the Due Process Clause of the Fourteenth Amendment. *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (quoting *Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992)). Michigan's long-arm statute allows a court to exercise "general" personal jurisdiction, Mich. Comp. Laws § 600.701, as well

as "limited" personal jurisdiction, *id.* § 600.705. Here, Alix alleges that limited jurisdiction exists pursuant to § 600.705(1), which allows a court to exercise jurisdiction over a nonresident for claims "arising out of an act" which constitutes "[t]he transaction of any business within the state." Section 600.715(1) is satisfied by "'the slightest act of business in Michigan,'" *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002) (quoting *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 906 (6th Cir. 1988)), and Brewington does not appear to contest that his conduct falls within the statute. Moreover, Michigan's long-arm statute "extends to the limits imposed by federal constitutional due process requirements and thus, the two questions become one." *Mich. Coalition*, 954 F.2d at 1176 (citing *Chandler v. Barclays Bank PLC*, 898 F.2d 1148, 1150–51 (6th Cir. 1990)). We must therefore determine whether the exercise of personal jurisdiction over Brewington comports with constitutional due process.

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). For a nonresident defendant to be subject to personal jurisdiction, he must have "certain minimum contacts [with the forum State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (citations, quotation marks, and ellipsis omitted). As noted, Alix asserts that limited, or specific, jurisdiction is present. Therefore, focusing on "the relationship among the defendant, the forum, and the litigation," *id.* (citations and quotation marks omitted); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985), we employ a three-part test to determine whether the exercise of personal jurisdiction over Brewington comports with constitutional due process:

> First, the defendant must *purposefully avail* himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Air Prods.*, 503 F.3d at 550 (emphasis added) (quoting *Mohasco*, 401 F.2d at 381).

**1.**

Brewington argues that the purposeful availment test is not met. "Purposeful availment" is "the constitutional touchstone of personal jurisdiction," and it exists "where the defendant's contacts with the forum state proximately result from actions by the defendant *himself* that create a substantial connection with the forum State . . . and where the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there." *Neogen*, 282 F.3d at 889 (citations and quotation marks omitted). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, . . . or of the unilateral activity of another party or a third person[.]" *Burger King*, 471 U.S. at 475 (citations and quotation marks omitted). Thus, a nonresident who deliberately engages in "significant activities within a State" or creates "continuing obligations between himself and residents of the forum" satisfies this requirement. *Id.* at 475–76 (citations and quotation marks omitted).

Alix alleges that Brewington purposefully availed himself of Michigan by: (1) pursuing employment through email and telephone communications with personnel in Alix's Michigan office; (2) signing an employment agreement with a Michigan choice-of-law provision and returning it to Alix's Michigan office; (3) attending a mandatory orientation session in Michigan; (4) communicating with his Michigan-based supervisors over the course of his employment; and (5) recruiting Michigan candidates for a position in Alix's Michigan office. Viewing the evidence in the light most favorable to Alix, we conclude that Alix has made the required *prima facie* showing. *See Air Prods.*, 503 F.3d at 549; *Neogen*, 282 F.3d at 887.

Despite the fact that Alix is not headquartered in Michigan, a number of the company's business and personnel departments, including Human Resources, Benefits, and Payroll, are housed in its Michigan office. Accordingly, Brewington secured employment with Alix through the company's Michigan office and attended the mandatory orientation session in Michigan. Furthermore, Brewington's duties required him to report to and conduct business with his Michigan-based colleagues throughout his employment with Alix. In addition to his connection with Alix's Michigan-based personnel, the record shows that Brewington's official duties included recruiting Michigan candidates to fill job openings in Michigan. Because Brewington

accepted a job in which his duties were purposefully aimed at, and tied to, Michigan and its residents, Michigan was, at least in part, the focus of Brewington's employment and the parties' relationship. *Compare Lanier*, 843 F.2d at 911 (holding that personal jurisdiction existed where "the real object" of nonresident's contacts was to have "ongoing, far-reaching consequences" in the forum State), *with Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 151 (6th Cir. 1997) (holding that plaintiff failed to make *prima facie* showing where it "alleged no facts connecting either the subject matter of the contract or its performance to the State of Michigan"). The fact that Brewington voluntarily executed an employment agreement with a Michigan choice-of-law provision reinforces the conclusion that he "deliberate[ly] affiliate[ed]" himself with the forum. *Burger King*, 471 U.S. at 480–82; *see also LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1295 (6th Cir. 1989).

The facts of this case establish that Brewington knowingly "created a connection" with Alix's Michigan office that was "intended to be ongoing in nature," as opposed to "a 'one-shot affair.'" *See CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263–65 (6th Cir. 1996) (quoting *Mohasco*, 401 F.2d at 385). Accordingly, his contacts with Michigan are not "random, fortuitous, or attenuated, but are the result of deliberate conduct that amounts to purposeful availment." *Air Prods.*, 503 F.3d at 551 (quotation marks omitted); *see also Burger King*, 471 U.S. at 480–81 (concluding that nonresident's "continuous course of direct communications" with plaintiff in Florida confirmed that nonresident "knew that he was affiliating himself with an enterprise based primarily in Florida"); *Kelly Servs. v. Eidnes*, 530 F. Supp. 2d 940, 947 (E.D. Mich. 2008) (finding that nonresident's "semi-regular contact with Michigan-based supervisors during the course of her employment" supported finding of purposeful availment).

Brewington's reliance on *Aysling, L.L.C. v. Mejia*, No. 13-13027, 2014 WL 545816 (E.D. Mich. Feb. 11, 2014), and *Calphalon Corp. v. Rowlette*, 228 F.3d 718 (6th Cir. 2000), is misplaced. For the reasons identified by the district court, we find that there are "several distinctions that limit the applicability of [*Aysling*] here." *See AlixPartners*, 133 F. Supp. 3d at 958 n.7. In *Calphalon*, unlike the instant case, the quality of the parties' relationship revealed that the nonresident defendant's contacts with the forum State were "purely 'fortuitous' and 'attenuated.'" 228 F.3d at 722. Notably, the parties' relationship "centered" on the defendant's

work outside the forum State and the defendant's communications and physical visits to the forum "occurred solely because [the plaintiff] chose to be headquartered in [the forum], not because [the defendant] sought to further its business and create 'continuous and substantial' consequences there." *Id.* at 723. Based on the fact that the defendant "did not make a deliberate affiliation with th[e] state nor could [it] reasonably foresee possible litigation there," the agreement's Ohio choice-of-law provision was not decisive. *Id.* In contrast, Brewington's contacts with Michigan are not purely fortuitous and attenuated. He made a deliberate connection with the forum State and its residents that was centered in part on his work in Michigan. Moreover, the Michigan choice-of-law provision in Brewington's employment agreement, when combined with his relationship with Alix's Michigan office, "reinforce[s] his deliberate affiliation with the forum State . . . ." *Burger King*, 471 U.S. at 482.

Brewington's primary argument is that, in light of the fact that Alix is not a Michigan resident, the Court must determine whether *Alix's connection with Michigan* is sufficient for Brewington to have anticipated being haled into court there. Brewington's argument misses the mark. The minimum contacts analysis focuses on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 134 S. Ct. at 1122 (citations omitted). Thus, the "plaintiff's residence in the forum State is not a separate requirement, and lack of residence will not defeat jurisdiction established on the basis of defendant's contacts." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984); *see also Walden*, 134 S. Ct. at 1124–25 (noting that the plaintiff's contacts with the defendant and the forum cannot "drive the jurisdictional analysis"). We agree with the district court that "[r]egardless of [Alix's] status as a forum resident, [Brewington's] actions established connections with Michigan," *AlixPartners*, 133 F. Supp. 3d at 959, and therefore, Alix's purported "lack of 'contacts'" with Michigan "will not defeat . . . jurisdiction," *Calder v. Jones*, 465 U.S. 783, 788 (1984) (citing *Keeton*, 465 U.S. at 779–81).

**2.**

We next consider whether Alix's action arises from Brewington's contacts with Michigan. "We have articulated the standard for this prong in a number of different ways, such as whether the causes of action were made possible by or lie in the wake of the defendant's

contacts, or whether the causes of action are related to or connected with the defendant's contacts with the forum state[.]" *Air Prods.*, 503 F.3d at 553 (citations and internal quotation marks omitted). It is clear, however, that this is a "'lenient standard'" and "the cause of action need not 'formally' arise from defendant's contacts." *Id.* (quoting *Bird*, 289 F.3d at 875). At a minimum, this factor is satisfied if "'the cause of action, of whatever type, ha[s] a substantial connection with the defendant's in-state activities.'" *Bird*, 289 F.3d at 875 (quoting *Third Nat'l Bank v. Wedge Grp., Inc.*, 882 F.2d 1087, 1091 (6th Cir. 1989)).

Alix brought a declaratory judgment action seeking to determine the parties' rights under Brewington's employment agreement, which, as explained above, was centered in part on Brewington's activities in Michigan. Prior to and during his employment, Brewington frequently communicated with Alix's Michigan-based personnel concerning the negotiation, execution, and performance of the agreement. Pursuant to that agreement, which contains a Michigan choice-of-law provision, Brewington agreed to resolve "any dispute" through arbitration, and the scope of that arbitration clause is at issue in the instant action. "Especially given that this prong is a 'lenient standard,' that the cause of action need not 'formally' arise from [Brewington's] contacts, and that [Alix] need only make a *prima facie* showing of jurisdiction under the procedural posture of this case, this prong is satisfied in this case." *Air Prods.*, 503 F.3d at 554.

**3.**

The final requirement is "whether exercising personal jurisdiction over [Brewington] would be reasonable, i.e., whether it would comport with traditional notions of fair play and substantial justice." *CompuServe*, 89 F.3d at 1267–68 (citations and internal quotation marks omitted). Where, as here, "the first two criteria are met . . . only the unusual case will not meet this third criterion." *Theunissen*, 935 F.2d at 1461) (citations and quotation marks omitted). In analyzing this requirement, we consider a number of factors, including: "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the policy." *Air Prods.*, 503 F.3d at 554–55 (citation omitted).

Brewington argues that it would be unreasonable to subject him to personal jurisdiction in Michigan because "the current dispute has only a tenuous connection with the State of Michigan." As explained above, however, Brewington deliberately affiliated himself with Michigan and its residents, and the fact that Brewington lives in Texas does not overcome the inference of reasonableness. See, e.g., Youn v. Track, Inc., 324 F.3d 409, 420 (6th Cir. 2003) ("We have also upheld specific jurisdiction in cases where doing so forced the defendant to travel."). "Because there is an inference of reasonableness when the first two Southern Machine prongs are satisfied, and because there are no considerations put forward by [Brewington] to overcome or contradict that inference, the exercise of jurisdiction is reasonable under the circumstances of this case." Air Prods., 503 F.3d at 555; see also AlixPartners, 133 F. Supp. 3d at 960 ("While this Court may not be the most convenient forum for Defendant, it is a reasonable one given that the contract was formed, and partly carried out, in Michigan.").

Finding that Brewington is subject to personal jurisdiction in Michigan, we next review the district court's grant of Alix's motion for summary judgment.

**B.**

Brewington concedes that our review of Alix's motion for summary judgment is controlled by *Reed Elsevier, Inc. ex rel. LexisNexis Division v. Crockett*, in which we held that "the question whether an arbitration agreement permits classwide arbitration is a gateway matter, which is reserved for judicial determination unless the parties clearly and unmistakably provide otherwise." 734 F.3d at 599 (citation and quotation marks omitted); *see also Huffman v. Hilltop Cos., LLC*, 747 F.3d 391, 398 (6th Cir. 2014).

Brewington argues that the broadly-worded arbitration clause in his employment agreement "clearly and unmistakably" establishes that the parties agreed to submit the question of whether the agreement permits classwide arbitration to the arbitrator. But the arbitration clause is "silent as to whether an arbitrator or a court should determine the question of classwide arbitrability, meaning the determination lies with this court." *Huffman*, 747 F.3d at 398 (citing *Reed Elsevier*, 734 F.3d at 599). Given this silence, the clause's broad language covering "any dispute" is insufficient evidence that the parties intended for the arbitrator to decide this

question, *Reed Elsevier*, 734 F.3d at 599, as is the incorporation of the AAA's rules, *see Huffman*, 747 F.3d at 393–94, 398; *Reed Elsevier*, 734 F.3d at 599-600. We must therefore decide whether the parties agreed to arbitrate. *Reed Elsevier*, 734 F.3d at 599 (citation omitted).

An agreement must expressly include the possibility of classwide arbitration for us to conclude that the parties agreed to it. *Id.* at 600; *see also Huffman*, 747 F.3d at 398–99. This arbitration clause is silent on the availability of classwide arbitration, and we may not presume from "mere silence" that the parties consented to it. *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 687 (2010). Further, the clause limits its scope to claims "arising out of or in connection with any aspect of *this Agreement*," as opposed to other employees' and/or potential employees' agreements, and states that the arbitrator's decision "shall be final and binding as to *both parties*." The mere incorporation of the AAA's rules is not sufficient evidence that the parties agreed to classwide arbitration. *See Huffman*, 747 F.3d at 393–94, 398–99; *Reed Elsevier*, 734 F.3d at 599–600. We therefore conclude that the parties' arbitration clause does not authorize classwide arbitration, and hold that Brewington must proceed on an individual basis.

### III. CONCLUSION

For the foregoing reasons, the orders of the district court are affirmed.

*So ordered.*