**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 17a0674n.06
**Case No. 17-3387**

**FILED**

Dec 05, 2017

DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| SPEEDEON DATA, LLC, | ) | |
| | ) | |
| *Plaintiff-Appellee*, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| INTEGRATED DIRECT MARKETING, LLC, | ) | DISTRICT OF OHIO |
| | ) | |
| *Defendant-Appellee*. | ) | |

O P I N I O N

BEFORE:     COLE, Chief Judge; McKEAGUE and STRANCH, Circuit Judges.

COLE, Chief Judge.  In one way, this is a case about a business relationship that went sour.  In another, it is a case-in-point about how a party can be its own worst enemy.  After Integrated Direct Marketing ("IDM") stopped paying its invoices, Speedeon filed suit to collect on the debts.  The district court first denied IDM's motion to dismiss for want of personal jurisdiction.  Then, it granted summary judgment to Speedeon, reasoning that IDM had admitted all of the elements necessary for Speedeon to prevail on its claims for breach of contract and for an account stated.  Though IDM pleaded affirmative defenses, the district court found that IDM had failed to marshal any record evidence in support of those defenses.  IDM appeals both orders.  We affirm.

## I. BACKGROUND

### A. Factual Background

Speedeon collects and processes consumer data for use in marketing campaigns. IDM also collects and processes consumer data, which it aggregates and resells to retailers. Speedeon and IDM entered into two written agreements for Speedeon to provide IDM with consumer data for use with two retailers, in exchange for payments from IDM.

Speedeon is a resident of Ohio, but IDM is not. Speedeon is an Ohio limited liability company with its principal place of business in Ohio. IDM is a Connecticut limited liability company with its principal place of business in Virginia. Its sole member is also a resident of Virginia. IDM reached out to Speedeon in Ohio to contract for its services. It negotiated with Speedeon in Ohio over telephone and by email. And it entered into two contracts for work to be performed in Ohio and which directed that payments be sent to Ohio.

For the first two years of the relationship, Speedeon provided IDM with consumer data and IDM paid the invoiced amounts. But IDM stopped paying its invoices. In total, it failed to pay for $180,929.48 in invoiced work between October 2014 and April 2015. IDM does not dispute that Speedeon completed the invoiced work, that it received the invoices, or that it was required to pay the invoices. Instead, IDM asserted that Speedeon "conspired" with IDM's former employees to steal IDM's clients and trade secrets and that because of this, IDM was not obligated to pay.

### B. Procedural Background

After IDM stopped paying its invoices, Speedeon filed suit in Ohio state court alleging two breach of contract claims, an account stated claim, and an unjust enrichment claim. IDM removed the suit to federal court and then moved to dismiss for want of personal jurisdiction.

The district court denied that motion, finding that Speedeon made a prima facie showing of specific personal jurisdiction based on IDM's contacts with Ohio.

Following that order, IDM filed an answer admitting all of the elements of Speedeon's breach of contract and account stated claims and asserting several affirmative defenses. Speedeon moved for summary judgment, which the district court granted after giving IDM months (and multiple extensions) to complete fact discovery to develop its affirmative defenses and explore potential counterclaims. The district court found that there were no genuine issues of material fact because IDM admitted that Speedeon provided work in accordance with their agreements, that it was required to pay for this work, and that it had failed to do so. IDM appeals.

## II.  ANALYSIS

We review de novo the district court's denial of IDM's motion to dismiss for lack of personal jurisdiction and its grant of Speedeon's motion for summary judgment. *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 548 (6th Cir. 2016).

### A.  Personal Jurisdiction

The district court correctly found that it could exercise personal jurisdiction over IDM. When a "district court relies solely on written submissions" to resolve a motion to dismiss for lack of personal jurisdiction, "the burden on the plaintiff is 'relatively slight,'" and "the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal." *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (citation omitted).

Speedeon showed that IDM reached out to it in Ohio for a business relationship, that IDM negotiated with Speedeon in Ohio, and that IDM entered into statements of work for

services to be completed in Ohio. That is enough to find that IDM was "transacting business"—meaning "to prosecute negotiations; to carry on business; to have dealings"—under Ohio's long-arm statute. Ohio R.C. § 2307.382(A)(1); *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 511 (6th Cir. 2006) (quoting *Ky. Oaks Mall v. Mitchell's Formal Wear*, 559 N.E.2d 477, 479 (Ohio 1990)).

These same contacts also satisfy the constitutional inquiry, which requires a defendant to have "minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *AlixPartners*, 836 F.3d at 549 (citation omitted). We follow a three-part test to determine whether we have specific personal jurisdiction over a defendant:

> First, the defendant must *purposefully avail* himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id.* at 549–50 (citation omitted). First, IDM purposefully availed itself of the privilege of acting in Ohio. It pursued a relationship with Speedeon in Ohio, communicated and negotiated through emails and phone calls with Speedeon personnel in Ohio, entered into agreements for work to be completed in Ohio, and sent payments to Ohio. These facts show that IDM "created a connection" with Speedeon in Ohio that was "intended to be ongoing in nature." *Id.* at 551 (citation omitted). Its contacts with Ohio are thus "the result of deliberate conduct that amounts to purposeful availment." *Id.* (citation omitted); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 480–81 (1985) (holding that nonresident defendant's "continuous course of direct communications" with plaintiff in Florida confirmed that nonresident "knew that he was affiliating himself with an enterprise based primarily in Florida").

Second, because Speedeon alleges that IDM breached a contract for work to be performed in Ohio, the claim "naturally arises from" IDM's contacts with Ohio. *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998).

Finally, IDM makes no argument that it would be unreasonable to exercise personal jurisdiction over it in Ohio. When the first two prongs of specific jurisdiction are met, "there is an inference of reasonableness." *AlixPartners*, 836 F.3d at 552 (citation omitted). Since IDM has not made any arguments "to overcome or contradict that inference, the exercise of jurisdiction is reasonable under the circumstances of this case." *Id*. at 552–53 (citation omitted).

IDM, for its part, never disputes any jurisdictional facts about whether it can be haled into court in Ohio. Instead, it only argues that because it contested personal jurisdiction in a motion to dismiss, "personal jurisdiction was required to be submitted to a jury and should have prevented this case from being dismissed on summary judgment." (IDM Reply Br. 6.) In effect, IDM would convert personal jurisdiction into a weapon to defeat summary judgment any time a defendant filed a motion to dismiss under Rule 12(b)(2). This argument is without merit. *See, e.g.*, *AlixPartners*, 836 F.3d at 546 (affirming district court's denial of motion to dismiss for lack of personal jurisdiction and grant of summary judgment to plaintiff). To contest personal jurisdiction after losing its motion, IDM should have identified "evidence [to] suggest a material variance from the facts as presented by [Speedeon]" and either "request[ed] an evidentiary hearing or mov[ed] for summary judgment." *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 899 (6th Cir. 2017) (citation omitted). IDM did not identify any evidence to suggest a "material variance from the facts as presented by" Speedeon. *Id.*

### B. Summary Judgment

Neither in the district court nor here does IDM raise a factual dispute about Speedeon's breach of contract or account stated claims. IDM admitted (1) the existence of a contract, (2) performance by Speedeon, (3) breach by IDM, and (4) damage to Speedeon. That is all that was required for Speedeon to prevail on its breach of contract claim. *See Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 565 (6th Cir. 2006). Likewise, IDM admitted that Speedeon rendered invoices to it that established an account stated, and that it never objected to the amounts in the invoices.

The only issue, then, is whether there was a genuine factual dispute related to any of IDM's affirmative defenses. As an initial matter, we reject IDM's argument that summary judgment should be denied simply because it raised an affirmative defense. We can and do resolve affirmative defenses at the summary judgment stage. *See, e.g.*, *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) ("[T]he question whether a particular affirmative defense is sufficiently supported by testimony to go to the jury may often be resolved on a motion for summary judgment." (quoting *United States v. Bailey*, 444 U.S. 394, 412 n.9 (1980))). When, as here, the moving party shows "the absence of a genuine issue of material fact" regarding its claims, "the nonmoving party must then come forward with specific facts showing that there is a genuine issue for trial." *Campbell v. Grand Trunk Western R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001). For an affirmative defense, the defendant has the burden to show that it is entitled to the defense. *Id.*

IDM has failed to identify any genuine factual disputes about its affirmative defenses. In the district court, IDM spent much of its summary judgment opposition re-hashing a discovery dispute and promising "soon to be filed claims/counterclaims." When it eventually turned to

Speedeon's motion, it argued only that it was entitled to set off because of Speedeon's purported tortious conduct.

Set off is a "right which exists between two parties, each of whom under an independent contract owes a definite amount to the other, to set off their respective debts by way of mutual deduction." *Monroe Retail, Inc. v. RBS Citizens, N.A.*, 589 F.3d 274, 285 (6th Cir. 2009) (quoting *Walter v. Nat'l City Bank of Cleveland*, 330 N.E.2d 425, 525 (Ohio 1975)). Nowhere in the district court did IDM argue that Speedeon owed it any money, much less a "definite amount" that could give rise to a genuine factual dispute. *See Campbell*, 238 F.3d at 775.

Even now, IDM does not identify record evidence to support this defense. It repeatedly complains about a "conspiracy" between Speedeon and IDM's "disgruntled former employees." (Appellant Br. 6.) But the most that IDM musters from the record is an email sent from a former employee to Speedeon containing IDM budget information and proposing (according to IDM) to start a joint venture. Assuming this email says what IDM claims, IDM does not allege from that record that this joint venture was ever formed, that Speedeon received money from it, or that IDM suffered losses. IDM thus does not point to any damages from the alleged misappropriation of this document.

While IDM listed "extinguishment" as an affirmative defense in its answer, it did not raise that in its summary judgment opposition. We decline to consider its arguments about that defense in the first instance here. *Thomas M. Cooley Law School v. Kurzon Strauss, LLP*, 759 F.3d 522, 529 (6th Cir. 2014) (noting that it is a "well-settled rule that 'this court declines to entertain arguments not presented in the first instance to the district court'") (citation omitted); *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008) (Our "rules generally provide that an argument not raised before the district court is waived on appeal to this Court."). Even if

we were to consider it, IDM has failed to identify record evidence before the district court or this court to show it could make that defense.

Nor did the district court decide that IDM could only assert affirmative defenses through counterclaims. Instead, the district court explained that it did "not have the responsibility to search the record sua sponte for genuine issues of material fact," and it found that IDM had failed to raise any such issues. (Order at 5, R. 83, Page ID 1066 (emphasis deleted).) As it explained, IDM "offered no evidence opposing [Speedeon's] Motion for Su[m]mary Judgment." We agree. To be sure, the district court noted that IDM failed to assert any counterclaims, but that is because IDM had said for almost a year (including in its summary judgment opposition) that it would "soon" file such claims. Read with this context in mind, the district court's discussion highlights a thread common in this case: IDM made many promises about what it would develop "soon," but it failed to adduce record evidence to support its arguments, whether couched as affirmative defenses or counterclaims.

Finally, we do not consider IDM's argument, raised before us for the first time in its reply, that a factual dispute exists because Speedeon allegedly committed spoliation. As we have "consistently held[,] . . . arguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived." *Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 624 (6th Cir. 2013).

### III. CONCLUSION

We affirm the judgment of the district court.