NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0206n.06

No. 23-5607

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
May 08, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| AMB MEDIA, LLC, | ) | |
| Plaintiff-Appellant, | ) ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| ONEMB, LLC; RED MOUNTAIN | ) | TENNESSEE |
| MEDIA GROUP, LLC; JOHN DOES 1– | ) | |
| 10, | ) | |
| Defendants-Appellees. | ) ) | OPINION |

Before: BATCHELDER, STRANCH, and DAVIS, Circuit Judges.

STRANCH, J., delivered the opinion of the court in which DAVIS, J., joined. BATCHELDER, J. (pp. 14–20), delivered a separate dissenting opinion.

**JANE B. STRANCH, Circuit Judge.** This appeal involves the jurisdiction of Tennessee's courts to hear trademark litigation brought against out-of-state Defendants. Plaintiff AMB Media is a Tennessee-based limited liability corporation (LLC) in the business of digitizing physical media. It accuses Defendants—several Arizona LLCs and anonymous individuals in the same business—of infringing on its trademarks. Before reaching the merits of AMB's trademark claims, however, the district court dismissed the case for lack of jurisdiction. It held that Defendants had not purposefully availed themselves of Tennessee as a forum and were not subject to suit there. But Defendants hold themselves out publicly as welcoming Tennessee sales and conduct a regular course of business in the state. Because that constitutes purposeful availment,

and because other jurisdictional prerequisites are adequately satisfied at this stage of the litigation, we **REVERSE** the district court's decision and **REMAND** for further proceedings.

## I.    BACKGROUND

### A.    Factual Background

Since 2014, AMB Media—a Tennessee LLC—has provided a service called "LEGACYBOX" for customers to digitally preserve their home movies, photos, and other media. It involves a multi-step process:  First, AMB sends to a customer a LEGACYBOX kit containing a prepaid shipping label, a box to fill with physical media, and barcodes to track sent items.  Then, the customer fills the box and returns it to AMB, which digitizes the media.  AMB then ships the box, now containing the physical media and a digital copy of some kind, back to the customer. AMB owns federal trademarks on the terms "Legacybox" and "LEGACYBOX" in connection with its offered goods and services.

Defendants are Arizona-based LLCs that offer a similar service.  Like AMB's service, customers use Defendants' products by sending in physical media for Defendants to digitize and return.  Defendants sell their products through a website, which contains reviews from Tennessee customers.  Between January 2020 and October 2022, Defendant OneMB—an LLC doing business as "digmypics MemoryBox"—acquired fifty-nine customers in Tennessee, and grossed $16,862 in revenue from those customers.  That represents less than one percent of OneMB's business over that timeframe.

### B.    Procedural History

In November 2020, OneMB filed a trademark application for the use of the phrase "DIGMYPICS MEMORYBOX" in connection with Defendants' digitizing services.  AMB has opposed the application before the United States Patent and Trademark Office.  It alleges that

Defendants' proposed "MEMORYBOX" trademark infringes upon AMB's "LEGACYBOX" mark due to the marks' similarity, the analogous services offered by both companies, and the customer confusion that is likely to result.

In August 2022, AMB filed this case in the Eastern District of Tennessee.[1] AMB's active complaint alleges that Defendants' conduct violates the Lanham Act, common law trademark and unfair competition law, and the Tennessee Consumer Protection Act. In December 2022, Defendants moved to dismiss on several grounds, including—as relevant here—purported lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). In June 2023, the district court granted Defendants' Rule 12(b)(2) motion, finding that because Defendants had not purposefully availed themselves of Tennessee as a forum, they were not subject to suit in the state. AMB timely appealed.

## II. STANDARD OF REVIEW

We review dismissals for lack of personal jurisdiction de novo. *Parker v. Winwood*, 938 F.3d 833, 839 (6th Cir. 2019). Plaintiffs bear the burden of establishing jurisdiction. *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 899 (6th Cir. 2017). But "where, as here, the district court rules without conducting an evidentiary hearing," the jurisdictional "burden is 'relatively slight'"—the plaintiff need only make a "*prima facie* showing that personal jurisdiction exists." *Id.* (quoting *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007)). In that context, "we consider pleadings and affidavits 'in a light most favorable to the plaintiff[]' and do not weigh 'the controverting assertions of the party seeking dismissal.'" *Id.* (quoting *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991)).

---

[1] The Patent Office has suspended its proceedings during the pendency of this litigation.

## III.   ANALYSIS

A court may exercise its power only over defendants subject to personal jurisdiction in the court's state.  Typically, assessing personal jurisdiction is a two-step process:  A defendant must be both "amenable to service of process under the forum state's long-arm statute" and "the exercise of personal jurisdiction [must] not deny the defendant due process."  *Bridgeport Music, Inc. v. Still N the Water Publ'g*, 327 F.3d 472, 477 (6th Cir. 2003) (quoting *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002)) (brackets omitted).  Because Tennessee's long-arm statute extends to the fullest extent permitted by the United States Constitution, however, we need "address only whether exercising personal jurisdiction over Appellees is consistent with federal due process requirements."  *Id.*; *see* Tenn. Code Ann. § 20-2-255; *Gordon v. Greenview Hosp., Inc.*, 300 S.W.3d 635, 646 (Tenn. 2009).  And though there are two forms of personal jurisdiction—general and specific, *see Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021)—our task here is additionally narrowed by the parties' agreement that Defendants are not subject to general jurisdiction in Tennessee.

That leaves specific jurisdiction.  For a court to exercise specific jurisdiction, a defendant must have had "such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'"  *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316-17 (1945)).  This test reflects "two sets of values—treating defendants fairly and protecting 'interstate federalism.'"  *Id.* at 360 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U. S. 286, 293 (1980)).  As for the first value, fairness means providing a defendant with "fair warning . . . that 'a particular activity may subject [it] to the jurisdiction of a foreign sovereign'" and a concomitant ability to alter its conduct to avoid that forum's jurisdiction.  *Id.* (quoting *Burger

*King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).  Fair warning, in turn, is satisfied where "a company . . . serves a market for a product in the forum State and the product [causes injury] there," even if the company is located elsewhere and the product is "designed and made" outside of the forum.  *Id.* at 363; *see also World-Wide Volkswagen*, 444 U.S. at 298.  Regarding the second value, the law of personal jurisdiction protects interstate federalism by ensuring "that States with 'little legitimate interest' in a suit do not encroach on States more affected by the controversy." *Id.* at 360 (quoting *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal.*, 582 U.S. 255, 263 (2017)).

Our circuit has developed a three-part standard, often termed the *Mohasco* test, to assess specific personal jurisdiction.  *See S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).  "First, the defendant must *purposefully avail* himself of the privilege of acting in the forum state or causing a consequence in the forum state."  *Sullivan v. LG Chem, Ltd.*, 79 F.4th 651, 670 (6th Cir. 2023) (quoting *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016)).  "Second, the claims '"must arise out of or relate to the defendant's contacts" with the forum.'"  *Id.* (quoting *Ford Motor Co.*, 592 U.S. at 359).  "Third, 'the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.'"  *Id.* (quoting *AlixPartners*, 836 F.3d at 549-50).  Each part of the *Mohasco* standard "represents an independent requirement, and failure to meet any one of the three means that personal jurisdiction may not be invoked."  *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1303 (6th Cir. 1989).  The district court found that AMB had failed to satisfy the first "purposeful availment" element, and therefore could not establish that the court had personal jurisdiction over Defendants.

### A. Purposeful Availment

AMB's appeal of the district court's purposeful availment determination relies primarily on *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883 (6th Cir. 2002). In *Neogen*, we considered Michigan's jurisdiction over Neo Gen Screening, Inc. (NGS), a Pennsylvania corporation. *Id.* at 886. NGS performed diagnostic testing of blood samples, and operated a website that directed potential customers to call or email to request a "blood collection form." *Id.* NGS would then send a "collection form" to the customer, whereupon the customer collected the sample, sent it back to NGS in a preaddressed envelope, and—after NGS completed testing— obtained test results either through the mail or by logging into a password-protected web page. *Id.* at 886-87. NGS had fourteen Michigan customers in the year prior to suit, and anticipated about the same number the following year. *Id.* at 887.

In assessing whether NGS's conduct subjected it to Michigan's jurisdiction, we noted that it would be a "close question" as to whether the interactive portions of NGS's website—granting passwords to Michigan users and holding itself out as welcoming Michigan business—would "alone . . . be sufficient to sustain personal jurisdiction." *Id.* at 891. We found *Mohasco*'s purposeful availment requirement plainly satisfied, however, because NGS conducted business with Michiganders on a regular basis. *Id.*

As in *Neogen*, Defendants here allegedly hold themselves out as welcoming Tennesseans' business by featuring reviews from Tennessee customers on their website.[2] And as in *Neogen*,

---

[2] The district court may have discounted this allegation because AMB's screenshots of Defendants' website do not show any Tennessee reviews. But when a court chooses to resolve a motion to dismiss for lack of jurisdiction on written submissions, as it did here, a plaintiff need only make a prima facie showing that personal jurisdiction exists. *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 505 (6th Cir. 2020). In that context, as previously explained, any contested facts are resolved in the plaintiff's favor. *See Neogen*, 282 F.3d at 887. Here, Defendants' affidavit submitted with their motion to dismiss did not deny that their website contained reviews from Tennessee customers. But even if it had, the district court's choice "to resolve the motion on . . . written submissions" alone would have made such a denial "irrelevant" at this stage. *Malone*, 965 F.3d at 505. By contrast, if a "court holds an evidentiary

Defendants have "welcomed [Tennesseans'] individual business on a regular basis" such that they "reasonably expect[] to conduct a given level of business in [Tennessee] year after year." 282 F.3d at 891. Specifically, Defendants served roughly twenty Tennessee customers annually in the 2020-2022 period, with an increasing number of Tennesseans purchasing Defendants' product each year during that timeframe. Under *Neogen*, therefore, Defendants have purposefully availed themselves of Tennessee as a forum.

Defendants resist *Neogen*'s application, noting that—unlike NGS—they neither entered contracts with customers nor provided customers with a website password or login information. But dissecting website features misses the jurisdictional forest for the trees. Regardless of the type of business at issue, if a company holds itself out to a jurisdiction's business and does regular commerce there, it has fair warning that it could be subject to suit in that location. *See Ford Motor Co.*, 592 U.S. at 363.

As one of our sister circuits has observed, "[t]hough the emergence of the internet presents new fact patterns, it does not require a wholesale departure from our approach to personal jurisdiction before the internet age," wherein a regular course of business typically constituted purposeful availment of a forum. *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1093 (9th Cir. 2023). In *Herbal Brands*, for example, the Ninth Circuit found that "the sales of physical products into a forum via an interactive website" establish personal jurisdiction if the sales occur in the defendant's regular course of business and the defendant has some control over the product's ultimate distribution. *Id.* at 1094. Other circuits have offered similar reasoning. *See Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 10 (1st Cir. 2018) (finding that "voluntary service of the

---

hearing and the [Defendants'] motion is properly supported with evidence, the plaintiff must overcome it by a preponderance of the evidence." *Id.*

U.S. market" coupled with "not insubstantial income" from that market constituted purposeful availment); *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 171 (2d Cir. 2010) (finding that "by offering bags for sale to New York consumers on [a] . . . website and by selling bags . . . to New York consumers," the defendant "purposefully avail[ed] [him]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws" (quoting *Burger King*, 471 U.S. at 475)). Use of an interactive website to sell products into a forum creates jurisdiction not because of any internet-specific rules, but because that course of conduct pairs a willingness to sell into the forum with regular sales—features that have long constituted purposeful availment. *See, e.g.*, *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 780 (1984) (where a defendant carries on a "part of its general business" in a forum state, that is "sufficient to support jurisdiction when the cause of action arises out of the very activity being conducted" in that state).[3]

Defendants contend that more than a willingness to do business and regular sales into a forum are needed to constitute purposeful availment. They note that less than one percent of their revenue was generated in Tennessee over the relevant timeframe. And they cast their choice not

---

[3] None of this is to say that web-based sales never present tricky jurisdictional questions. For instance, two of our sister circuits have split over whether a company's single electronic sale constitutes purposeful availment of a forum where the plaintiff generated the sale. *Compare NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 624-25 (7th Cir. 2022) (finding a single sale into a forum through an online marketplace sufficient to constitute purposeful availment even though the plaintiff arguably "manufactured jurisdiction by having its agent purchase the infringing product"), *with Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 953 & n.3 (8th Cir. 2022) (reaching the opposite result where the plaintiff's "affiliate purchased the allegedly infringing t-shirt" and no other forum "consumers viewed or purchased any other infringing goods"). Particularly difficult problems might also be posed in future cases involving infrequent or non-commercial sellers. *See Ford Motor Co.*, 592 U.S. at 366 n.4 (questioning whether, if a "retired guy in a small town in Maine carves decoys and uses a site on the Internet to sell them," he could "be sued in any state if some harm arises from the decoy" (internal citation and quotation marks omitted)); *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 888-89 (2011) (Breyer, J., concurring) (noting that the Supreme Court "has strongly suggested that a single sale of a product" through a distributor into a state "does not constitute an adequate basis for asserting jurisdiction over an out-of-state defendant"). We need not grapple with these fringe cases, because Defendants here have a regular course of business in Tennessee above and beyond what both the Supreme Court and the courts of appeal have held is sufficient to constitute purposeful availment.

to specifically target Tennessee or reach out affirmatively to any Tennessee customers as jurisdictionally dispositive. *See Advanced Sols. Life Scis., LLC v. BioBots, Inc.*, No. 3:16-CV-00709-CRS, 2017 WL 2114969, at *6 (W.D. Ky. 2017) (collecting cases standing for the proposition that "the crucial distinction" in evaluating purposeful availment "appears to be who reached out to whom").

But as we reasoned in *Neogen*, "the proper test for personal jurisdiction is not based on a 'percentage of business' analysis . . . but rather on whether the absolute amount of business conducted [in the forum] represents something more than 'random, fortuitous, or attenuated contacts' with the state." 282 F.3d at 891-92 (quoting *Burger King*, 471 U.S. at 475); *see also Herbal Brands*, 72 F.4th at 1095 (rejecting the notion that a certain number of sales is necessary to constitute purposeful availment and instead evaluating whether the sales occurred in the regular course of business). In *Neogen*, fourteen annual sales per year in Michigan was enough, 282 F.3d at 891; Defendants' roughly twenty sales per year into Tennessee through their regular course of business likewise constitutes purposeful availment.[4]

Although directly targeting a state is one way to demonstrate purposeful availment, moreover, "Supreme Court precedent does not establish specific targeting of a forum as the *only* means of showing that the purposeful availment test has been met." *Plixer*, 905 F.3d at 9 (emphasis

---

[4] Focusing on the percentage of Defendants' sales into Tennessee and the timeframe in which the sales were completed, the dissent argues that Defendants did not conduct a regular course of business in the state. But Defendants' receiving less than one percent of their revenue from Tennessee is not inherently probative—after all, Tennessee makes up roughly two percent of the United States's population. *See Quickfacts, Tennessee*, United States Census, https://perma.cc/97CV-DUFD. More importantly, the Supreme Court has explicitly rejected the notion that a national business does not purposefully avail itself of a state's jurisdiction simply because it conducts more sales elsewhere. *Keeton*, 465 U.S. at 772 (criticizing, and reversing, a lower court's reasoning that a company's small "New Hampshire tail" was "too small to wag so large an out-of-state dog"). Finally, our precedent establishes no minimum amount of time that a company must sell products into a state before it has conducted a course of business there. The standard is whether the facts, taken in the light most favorable to the plaintiff at this prima facie stage, suggest that a defendant "reasonably expects to conduct a given level of business" in the forum. *Neogen*, 282 F.3d at 891. Given the increasing number of products sold by OneMB into Tennessee each year of its existence, that standard is met here.

added). This dichotomy explains some cases' emphasis on "who reached out to whom": Where sales are particularly sporadic—"as little as a single transaction"— affirmative targeting of a forum may be necessary to constitute purposeful availment. *Advanced Sols.*, 2017 WL 2114969, at *6. But no specific targeting is required when a defendant, as here, operates "a national [business] aimed at a nationwide audience" with regular sales into a given forum. *Keeton*, 465 U.S. at 781; *see also Chloe*, 616 F.3d at 171 (noting that a defendant's attempt "to serve a nationwide market does not diminish any purposeful contacts" with forum customers).

Defendants here chose to repeatedly serve Tennessee customers without taking any "steps to limit [their] website's reach or block its use by [those] customers." *Plixer*, 905 F.3d at 9. Given that choice, "[t]here is no unfairness in calling [Defendants] to answer for [their products] wherever a substantial number . . . are regularly sold"—including in Tennessee. *Keeton*, 465 U.S. at 781. After all, when a company has "shipped . . . product[s] to [Tennessee] only after it had structured its sales activity in such a manner as to invite orders from [that forum and others] and developed the capacity to fill them," that entity "cannot now point to its 'customers in [Tennessee] and tell us, "It was all their idea."'" *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 625 (7th Cir. 2022) (quoting *uBid, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 428 (7th Cir. 2010)).

In response, the dissent contends that Defendants' sales into Tennessee do not constitute purposeful availment because they represent random, fortuitous, and attenuated contacts caused solely by Defendants' customers. *See Burger King*, 471 U.S. at 475 (noting that jurisdiction arises only from deliberate "actions by the defendant *himself*"). Setting aside the split between this view and the sister circuit cases quoted above, the Supreme Court has repeatedly construed a defendant's direct sales into a state as jurisdictionally relevant actions taken by that defendant. *See, e.g.*, *Ford Motor Co.*, 592 U.S. at 365 (listing, as relevant contacts, Ford's sales of new and used cars into

the forum states); *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (listing the "physical entry into the [forum] State" by a defendant's "goods" as "a relevant contact"); *World-Wide Volkswagen*, 444 U.S. at 295 (suggesting that regularly selling cars "to [forum] customers or residents" creates jurisdictionally relevant contacts between the defendant and the forum state); *Hanson v. Denckla*, 357 U.S. 235, 251 (1958) (finding jurisdiction lacking because the defendant transacted no business in the forum, and comparing the case to "one that arises out of an act done or transaction consummated in the forum State").[5] Looking at direct sales to Tennessee customers does not, as the dissent alleges, hold Defendants responsible for a third party's unilateral actions. Instead, it recognizes that a company's shipment of its product into a given forum is a relevant contact in the jurisdictional analysis. And when, as here, a defendant creates repeated contacts through a regular course of business, it has purposefully availed itself of that forum's jurisdiction.

## B. Remaining *Mohasco* Elements

Having established that Defendants purposefully availed themselves of Tennessee as a forum, we turn to the remaining elements of AMB's prima facie jurisdictional case. First, AMB's trademark-based claims must "arise out of or relate to" Defendants' contacts with Tennessee. *Sullivan*, 79 F.4th at 670 (quoting *Ford Motor Co.*, 592 U.S. at 359). Because AMB's claims "allege [trademark-based] harm caused by Defendants' sales of products," they "clearly arise out

---

[5] Some defendants may take additional actions to further target the relevant forum. *See, e.g.*, *Ford Motor Co.*, 592 U.S. at 365 (noting that Ford engaged in extensive advertising in the forum states). But while these actions might be *sufficient* to constitute purposeful availment, no case suggests—as the dissent does—that they are *necessary* when the defendant conducts a regular course of direct sales into the forum state. The analysis is different in cases involving "the movement of goods from manufacturers *through distributors* to consumers," *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 881 (2011) (emphasis added); without any direct contact between the defendant and the forum, there must be "something more than" the defendant's awareness "of its product's entry into the forum State through the stream of commerce in order for the State to exert jurisdiction over the defendant," *Asahi Metal Ind. Co. v. Sup. Ct. of Cal.*, 480 U.S. 102, 111 (1987) (plurality opinion). But the requirements from these so-called "stream of commerce" cases do not govern cases where the defendant, as here, "do[es] business in" the forum state by selling and shipping its products there. *Id.* at 112.

of and relate to Defendants' conduct of selling those same products to [Tennessee] residents." *Herbal Brands*, 72 F.4th at 1096; *see also Neogen*, 282 F.3d at 892 (where a plaintiff "claims that the use of [the defendants'] tradename on its website and its . . . contacts with [forum] residents under that name have caused a variety of economic harms in" the forum state, *Mohasco*'s relatedness prong is satisfied). The constitutional requirement of "an affiliation between the forum and the underlying controversy," *Ford Motor Co.*, 592 U.S. at 359 (quoting *Bristol-Myers*, 582 U.S. at 262), is satisfied here because the alleged harm of consumer confusion from Defendants' use of their mark in Tennessee and elsewhere is suffered in AMB's Tennessee place of business. *See Bird*, 289 F.3d at 876 (noting that trademark violations cause injury "where the plaintiff does business and in the state where its primary office is located").

Finally, AMB must show that Defendants' actions had "a substantial enough connection with the forum state to make the exercise of jurisdiction . . . reasonable." *Sullivan*, 79 F.4th at 670 (quoting *AlixPartners*, 836 F.3d at 549-50). Because AMB has established its prima facie case regarding purposeful availment and relatedness, "an inference arises that this third factor is also present." *Id.* at 674 (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996)). "We 'must consider several factors in this context, including "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies."'" *Id.* (quoting *CompuServe*, 89 F.3d at 1268).

Defendants argue that, as Arizona-based LLCs, litigating this case in Tennessee will constitute a significant burden, and that Arizona has a substantial interest in hearing this dispute given Defendants' presence there. But it would also be significantly burdensome for AMB, a Tennessee LLC, to litigate this case in Arizona, and Tennessee has an obvious interest in hearing

the dispute given the alleged injury's location. *See Bird*, 289 F.3d at 876. On balance, and considering AMB's light prima facie burden, Defendants' arguments do not overcome the inference of reasonableness arising from AMB's satisfaction of the first two *Mohasco* elements.[6]

Defendants ultimately turn to policy considerations, urging us to consider what finding jurisdiction could augur for online commerce more broadly. As discussed, however, longstanding precedent establishes that a company's choice to welcome customers from and regularly sell products into a state subjects the company to that state's jurisdiction. *See, e.g.*, *World-Wide Volkswagen*, 444 U.S. at 298. Crafting an e-commerce exception to that standard would permit web-based companies to reap the benefits of a nationwide market while foreclosing customers' ability to seek redress where injured. But regardless of how it sells its products, a company doing repeated business in given fora "enter[s] those jurisdictions through the front door." *Ford Motor Co.*, 592 U.S. at 384 (Gorsuch, J., concurring). There is no internet-specific reason why, "when faced with the process server, it should be allowed to escape out the back." *Id.*

### IV.   CONCLUSION

For the reasons set forth above, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings.

---

[6] Because this appeal involves only AMB's prima facie jurisdictional case, our conclusion is limited to that issue. The district court may (but need not) elect to further probe jurisdiction through discovery or an evidentiary hearing, which would raise AMB's jurisdictional burden. *See Malone*, 965 F.3d at 505-06; *Neogen*, 282 F.3d at 893. We also leave Defendants' other arguments for dismissal or transfer for the district court to address in the first instance.

**ALICE M. BATCHELDER**, Circuit Judge, dissenting. Because OneMB and Red Mountain (collectively referred to as "OneMB") did not purposefully avail themselves of the laws of Tennessee, I would affirm the district court and therefore respectfully dissent from the majority opinion.

Between January 1, 2020, and October 28, 2022, OneMB had 59 Tennessee-customers, totaling $16,862 in revenue through its nationally available website. Those sales amounted to less than one percent of OneMB's revenue per year,[1] which begs the question, "Is this enough to establish a regular course of business to show purposeful availment via a website in the Sixth Circuit?" I would answer "no."

The majority's holding subjects website-based companies to specific personal jurisdiction in forums with which these companies have random, fortuitous, or attenuated contacts. The majority's holding accomplishes this expansion of personal jurisdiction in two ways. First, the majority construes the facts before us in such a way as to conclude that OneMB regularly conducted business with customers in Tennessee, the forum state. Second, the majority misapplies our analysis of purposeful availment by looking to the actions of customers rather than the conduct of companies, requiring website-based companies to shield themselves from customers by limiting website access.

### I.     OneMB did not conduct a regular course of business in Tennessee.

To conduct a regular course of business in a forum state such that a company subjects itself to specific personal jurisdiction in a forum, that company must "continuously and deliberately exploit[] the [forum's] market." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984) (citing

---

[1] While we do not measure purposeful availment by a percentage of business, *see Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 891–92 (6th Cir. 2002), we must *not* let a company's "random, fortuitous, or attenuated contacts" with a forum become enough for purposeful availment. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297–98 (1980)). The Supreme Court has explained that "a national [company]" can be subject to specific personal jurisdiction in a given forum *if* the company conducted a "substantial" amount of its business in that forum. *Keeton*, 465 U.S. at 781; *see also Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 592 U.S. 351, 365 (2021) (explaining that a national company purposefully availed itself of the laws of the forum states because it advertised in the forum states; it "foster[ed] ongoing connections" with forum-state customers; it had 120 dealerships between the two forum states; and it continuously and intentionally did business in the forum states). Ultimately, this course-of-business inquiry is premised upon the notion that the contacts which arise from a company's course of business are so "continuous and systematic" that specific personal jurisdiction, by way of purposeful availment, is appropriate. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945).[2]

The majority principally relies on *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883 (6th Cir. 2002), for the proposition that OneMB's business with Tennessee residents constitutes a regular course of business in Tennessee. In *Neogen*, a Pennsylvania-based company ("NGS") utilized its website to do business with Michigan residents over a period of fourteen years. *Id.* at 891. Therefore, NGS could expect a certain level of profit from Michigan residents, year-after-year. *Id.* at 890–91. By contrast, OneMB collected less than one percent of its annual revenue from Tennessee residents over a roughly two-year period. I find this timeframe distinction

---

[2] In a similar but different context, we adopted the stream of commerce "plus" theory. *See Bridgeport Music, Inc. v. Still N the Water Publ'g*, 327 F.3d 472, 479–80 (6th Cir. 2003). In *Asahi Metal Industry Company, Ltd v. Superior Court*, Justice O'Connor articulated that theory which requires that a company do more than simply place its products in the stream of commerce to purposefully avail itself of the laws of any specific forum. 480 U.S. 102, 112 (1987). In *Bridgeport Music*, we agreed with Justice O'Connor that there must be something more. *See* 327 F.3d at 479. Here, OneMB did not specifically target Tennessee, but placed its product (home-media digitization) on the market through its website, gaining less than one percent of its annual revenue from Tennessee customers over roughly two years. Therefore, *if* this fact pattern were solely in the stream-of-commerce context, OneMB would not be subject to personal jurisdiction in Tennessee because OneMB did not do something more to purposefully avail itself of the laws of Tennessee.

persuasive.[3] To say that the minimal number of transactions here, over roughly *two* years, is akin to the *fourteen*-year connection that NGS established with Michigan residents is to impermissibly stretch the holding of *Neogen Corp.*

Moreover, OneMB did not continuously and systematically target Tennessee residents. It held itself out as a nationwide company, and the contacts it had with Tennessee were not more than random, fortuitous, or attenuated. *Contra Keeton*, 465 U.S. at 772, 781 (explaining that a nationwide publication conducted a regular course of business for specific personal jurisdiction in the forum state when it sold 10,000 to 15,000 copies *per month* in the forum state). OneMB did not specifically advertise to Tennessee residents, it did not foster ongoing relationships with Tennessee residents, and it did not establish an active presence in Tennessee. *Contra Ford Motor Co.*, 592 U.S. at 365. And as the majority recognizes, OneMB did not conduct an overwhelming or even substantial amount of business in Tennessee, deriving less than one percent of its annual revenue there. *Contra Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002) (accepting the business of 4,666 forum-state-residents meant that the defendant purposefully availed himself of the forum). OneMB did not overwhelmingly, deliberately, systematically, or continuously conduct business in Tennessee. This fact pattern does not demonstrate a regular course of business such that a company purposefully availed itself of the laws of a forum state.

## II.  OneMB did not purposefully avail itself of the laws of Tennessee based on its website.

Based on precedent which binds us today, to purposefully avail itself of a forum state's laws, a company must "deliberately 'reach[] out beyond' its home." *Ford Motor Co.*, 592 U.S. at

---

[3] Like the district court, I also find telling the fact that OneMB's contacts with Tennessee residents constituted less than one percent of its annual revenue for a roughly two-year period. As the district court stated, these contacts are nothing more than "random, fortuitous, or attenuated contacts." *See AMB Media, LLC v. OneMB, LLC*, 2023 WL 3766597, at *5 (E.D. Tenn. June 1, 2023).

359 (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)); *see also Int'l Shoe Co.*, 326 U.S. at 317 (explaining that we look for "such contacts . . . with the . . . forum as make it reasonable . . . to require the [company] to defend" itself in the forum). Random, fortuitous, or attenuated contacts or the unilateral acts of another party will not give rise to purposeful availment. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *Intera Corp. v. Henderson*, 428 F.3d 605, 617 (6th Cir. 2005). The company itself must create a substantial connection with the forum state so that it should reasonably anticipate being brought to court there. *Burger King Corp.*, 471 U.S. at 474; *see also Ford Motor Co.*, 592 U.S. at 359–60.

For purposeful availment based on a website, we look to whether the company's "website is interactive to a degree that reveals *specifically intended* interaction[s] with residents of the [forum] state." *Neogen Corp.*, 282 F.3d at 890 (emphasis added) (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)).[4] So, for a website-based company to purposefully avail itself of the privilege of acting in a forum, it must do something itself to target the forum, according to our precedent—precedent which the majority purportedly relies on. In other words, we look to the actions of the company to determine if it purposefully availed itself of a specific forum. However, the majority flips this analysis.

In the majority's formulation, OneMB repeatedly served Tennessee customers without "limit[ing] its website's reach or block[ing] its use by [Tennessee] customers." *Plixer Int'l, Inc. v.*

---

[4] In *Neogen Corp.*, we concluded that purposeful availment existed because "[s]everal aspects of the website" supported finding purposeful availment. *Neogen Corp.*, 282 F.3d at 890. There, the defendant granted passwords to website users, signifying the formation of a contract—or at least a defined relationship—between the defendant and forum state customers. *Id.* at 890–91. The defendant in *Neogen Corp.* also displayed a geographical breakdown of data related to its product, expressly including the forum state. *Id.* at 891. We also held that the defendant in *Neogen Corp.* relied on forum-state-customers for 14 years. *Id.* This, we said, shows that the defendant "reasonably expect[ed] to conduct a given level of business in [the forum] year after year." *Id.* These additional facts are not present here. I recognize that AMB Media alleges that Tennessee customers posted reviews on OneMB's website, trying to draw a comparison between this matter and the fact pattern in *Neogen Corp.* However, this minimal website interactivity does not show that OneMB purposefully availed itself of the laws of Tennessee.

*Scrutinizer GmbH*, 905 F.3d 1, 9 (1st Cir. 2018).[5]  By relying on this statement from the *Plixer* case for the matter before us, the majority places the burden on website-based companies to avoid specific personal jurisdiction, i.e., to limit access to website-based companies' own websites.  In other words, the majority allows for our circuit to find specific personal jurisdiction by looking to the actions of a company's customers rather than the conduct of the company.  This reliance on *Plixer* is misplaced, and we are bound by the decision of a prior panel in *Neogen Corp.* and the Supreme Court's guidance as applied to the internet.

The majority has said the "quiet part" out loud: as little as a single, online transaction might be enough to purposefully avail a company of the laws of any forum.  And this would make state long-arm statutes meaningless.  In my view, and the Supreme Court's, the "essential foundation" for specific, personal jurisdiction is a "strong 'relationship'" between the defendant and the forum. *Ford Motor Co.*, 592 U.S. at 365 (quoting *Helicopteros Nacionales De Colombia v. Hall*, 466 U.S. 408, 414 (1984)).  The Court in *Ford Motor Co.* declined to extend its holding to the internet context, *see id.* at 366 n.4, but the Court's conclusion rested on Ford's extensive relationship with the forums.  *Id.* at 371.  That the facts before us here do not support a finding of that strong or extensive relationship does not offer OneMB a back door to escape personal jurisdiction in Tennessee.  *See id.* at 384 (Gorsuch, J., concurring); *see also id.* at 382–83 (Gorsuch, J., concurring) (expressing caution about the "global reach" of the internet and what impact that has on purposeful availment).  But after construing the facts of this matter in such a way as to say that OneMB conducted a regular course of business in Tennessee, the majority explains that OneMB's online sales are direct sales that are purportedly enough to satisfy purposeful availment based on

---

[5] As I have explained, this formulation is premised upon the incorrect idea that OneMB had a regular course of business with Tennessee residents.

Supreme Court precedent.[6] These few, customer-initiated, and online sales that OneMB had with Tennessee residents are nothing more than random, fortuitous, or attenuated.

Supreme Court and Sixth Circuit precedent that binds us today does not support the conclusion that a company purposefully availed itself of the laws of a forum state based on the actions of forum-state consumers whom the company did not itself target. *See, e.g.*, *Helicopteros*, 466 U.S. at 417 ("Such unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."); *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."). Instead, we look to the company's conduct to determine whether it purposefully availed itself of the laws of a certain forum state. *See, e.g.*, *Ford Motor Co.*, 592 U.S. at 359 ("The defendant, we have said, must take some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum state."

---

[6] For example, the Supreme Court in *Ford Motor Co.* stated that Ford's sale of new and used cars in the forum states represented contacts with the forums, 592 U.S. at 365, but "Ford work[ed] hard to foster [those] ongoing connections." *Id.* The Court explained that in order to subject a company to specific jurisdiction in a forum, the company must have a "fair warning" that "a particular activity may subject [it] to the jurisdiction of a foreign sovereign." *Id.* at 360 (alteration in original) (citation omitted). And in *Walden*, the Court stated that "physical entry into the [forum] – either by the defendant in person or through . . . goods . . . is certainly a relevant contact." 571 U.S. at 285. But in the very next paragraph the Court elaborated that "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum . . . that is the basis for its jurisdiction over him." *Id.* The internet presents interesting challenges to our precedent, but one thing is certain about purposeful availment precedent: the defendant himself must avail himself of the laws of the forum.

Here, OneMB did not have a fair warning that it could be subject to the laws of Tennessee based on its conduct, or lack thereof, with Tennessee. It may be foreseeable that a resident of Tennessee would buy OneMB's product on its nationally available website. But "foreseeability alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *World-Wide Volkswagen Corp.*, 444 U.S. at 295; *see also Hanson*, 357 U.S. at 251 ("However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the minimal contacts with that State that are a prerequisite to its exercise of power over him." (internal quotation and citation omitted)). When considering whether an online company purposefully availed itself of the laws of a forum we must determine if the company's website was "interactive to a degree that reveals specifically intended interaction[s] with residents of the [forum] state." *Neogen Corp.*, 282 F.3d at 890 (citation omitted). OneMB's website does not reveal that it specifically targeted residents of Tennessee.

(alteration in original) (internal quotation and citation omitted)). Companies who conduct business online must use their websites to "specifically intend interaction[s] with residents of the [forum] state." *Neogen Corp.*, 282 F.3d at 890 (citation omitted).

**CONCLUSION**

OneMB did not specifically intend to interact with residents of Tennessee, and it collected less than one percent of its annual revenue from Tennessee over a span of two years. Under the majority's formulation, a company like this is subject to personal jurisdiction in a forum with which it has *below*-minimum contacts. It is easy to think of a scenario in which OneMB would have purposefully availed itself of the laws of Tennessee based on its website. For instance, if OneMB continuously and systematically conducted business with Tennessee residents over a fourteen-year period, then we could properly conclude that OneMB purposefully availed itself of the laws of Tennessee. *Cf. Neogen Corp.*, 282 F.3d at 891. If OneMB advertised in Tennessee or otherwise specifically directed itself towards Tennessee, then we could properly conclude that OneMB purposefully availed itself of the laws of Tennessee. *Cf. Ford Motor Co.*, 592 U.S. at 365. But neither alternative scenario is present here, and OneMB's conduct does *not* suggest that it specifically targeted residents of the forum: Tennessee.

It is for these reasons that I agree with the district court that OneMB did not purposefully avail itself of the laws of Tennessee. I, therefore, respectfully dissent.